OPINION
William Graham ("Appellant"), the natural father of Tiffany Graham, a minor child, appeals from the judgment entered in the Stark County Court of Common Pleas, Juvenile Division, awarding permanent custody of Tiffany Graham to the Stark County Department of Human Services. Appellant assigns as error:
I
 THE TRIAL COURT LACKED JURISDICTION TO AWARD PERMANENT CUSTODY OF TIFFANY GRAHAM TO THE STARK COUNTY DEPARTMENT OF HUMAN SERVICES DUE TO THE FACT THAT SERVICE BY PUBLICATION WAS DEFECTIVE.
II
 THE TRIAL COURT LACKED JURISDICTION TO AWARD PERMANENT CUSTODY OF TIFFANY GRAHAM TO THE STARK COUNTY DEPARTMENT OF HUMAN SERVICES BECAUSE WILLIAM GRAHAM DID NOT RECEIVE PROPER NOTICE OF THE INITIAL ADJUDICATION HARING IN VIOLATION OF HIS DUE PROCESS RIGHTS UNDER THE FIFTH AND FOURTEENTH AMENDMENTS OF THE U.S. CONSTITUTION.
III
 THE JUVENILE COURT ERRED IN FAILING TO ADVISE APPELLANT OF HIS RIGHT TO COUNSEL PURSUANT TO JUVENILE RULE 29 AND BY FAILING TO OBTAIN A KNOWING, VOLUNTARY AND INTELLIGENT WAIVER OF APPELLANT'S RIGHT TO COUNSEL AND BY FAILING TO APPOINT COUNSEL FOR APPELLANT, AN UNREPRESENTED PARTY.
IV
 THE TRIAL COURT DENIED APPELLANT EFFECTIVE ASSISTANCE OF COUNSEL.
V
 THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION WHEN IT DENIED THE APPELLANT A CONTINUANCE TO ALLOW APPELLANT AN ATTEMPT TO COMPLY WITH THE CASE PLAN AND ATTEMPT TO REUNIFY WITH HIS DAUGHTER, TIFFANY.
VI
 THE TRIAL COURT COMMITTED ERROR WHEN IT GRANTED THE STARK COUNTY DEPARTMENT OF HUMAN SERVICES' MOTION FOR PERMANENT CUSTODY AND TERMINATED THE PARENTAL RIGHTS OF THE APPELLANT BECAUSE THE DECISION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
VII
 THE TRIAL COURT ERRED IN FINDING THAT THE STARK COUNTY DEPARTMENT OF HUMAN SERVICES MADE REASONABLE CASE PLANNING AND DILIGENT EFFORTS TO ASSIST THE PARENTS TO REMEDY THE PROBLEMS THAT INITIALLY CAUSED THE CHILDREN TO BE PLACED OUTSIDE THE HOME.
On February 24, 1995, the Stark County Department of Human Services ("DHS") filed an affidavit alleging that Billy Covington (DOB 3/9/88), Tiffany Graham (DOB 10/20/89), and Scott Graham (DOB 8/28/91) were dependent children. The DHS requested emergency temporary custody and that request was subsequently granted. A summons with notice of legal rights and a copy of the complaint was served upon the minor children's mother, Brenda Elliott. An affidavit for publication service for appellant was filed by DHS on February 28, 1995. This affidavit requested publication service for an adjudicatory hearing to take place on March 16, 1995, at 9:00 a.m.; a permanent custody hearing to take place on April 24, 1995, at 9:15 a.m.; and a dispositional hearing to take place on May 11, 1995, at 9:15 a.m. The publication notice from this affidavit appeared in the newspaper on March 8, 1995.
Similar affidavits were filed and notice publications were issued regarding other interested parties.
On March 20, 1995, a second affidavit requesting publication service on appellant was filed by the DHS. This affidavit requested publication service for an adjudicatory hearing on April 13, 1995 at 2:45 p.m.; a permanent custody hearing on April 24, 1995, at 9:15 a.m.; and a dispositional hearing on May 11, 1995, at 9:15 a.m. This second affidavit requesting publication service was filed as a result of the trial court continuing the adjudicatory hearing.
At the initial adjudicatory hearing, it was stipulated that the children were dependent. Appellant was not present at this hearing. The trial court granted DHS's request for temporary custody and approved the initial case plan. On December 6, 1995, a review hearing was held and temporary custody was continued.
Subsequently, the DHS located appellant's address and the permanent custody hearing was continued from July 28, 1997 until September 22, 1997.
At the permanent custody hearing, appellant appeared, pro se, and specifically stated on the record that he understood that he had the right to counsel and that the hearing was to determine whether his rights as a parent to Tiffany Graham should be permanently severed.
Appellant admitted at the hearing that he had last seen Tiffany for a short period of time on Christmas day four years earlier. From January 1993 to July 1993, appellant testified that he saw Tiffany only two or three times. Although appellant lived with Tiffany from the time of her birth until 1990, he did not see her at all from 1990 until 1992.
Following the hearing, permanent custody of Tiffany and the other minor children was granted to the DHS on October 21, 1997. It is from this decision that appellant has filed the instant appeal.
 I, II
Appellant claims the trial court lacked jurisdiction over him because he was improperly served and he did not have proper notice of the adjudication hearing. We disagree.
Appellant argues DHS did not utilize due diligent efforts to locate him. Appellant claims DHS filed the affidavit of due diligence after notice by publication. Juv.R. 16(A) paragraph 2 provides:
 1. Except as otherwise provided in this rule, when the residence of a party is unknown and cannot be ascertained with reasonable diligence, service shall be made by publication. Service by publication upon a non-custodial parent is not required in diligent child or unruly child cases when a person alleged to have legal custody of the child has been served with summons pursuant to this rule, but the court may not enter any order or judgment against any person who has not been served with process or served by publication unless that person appears. Before service by publication can be made, an affidavit of a party or party's counsel shall be filed with the court. The affidavit shall aver that service of summons cannot be made because the residence of the person is unknown to the affiant and cannot be ascertained with reasonable diligence.' (emphasis added)
DHS does not ask to be excused from that rule, instead it claims appellant waived all defects in service by signing a Notice of Rights Waiver Form pursuant to Juv.R. 29(B). In the waiver form, appellant agreed to the following:
 1. I hereby acknowledge service of summons or otherwise waive the issuance of service of summons and voluntarily enter appearance in this matter.
 2. The Court has informed me of the substance of the complaint, the purpose of the hearing and possible consequences thereof.
 3. I have been informed of my right to counsel and of my right to court appointed counsel if I qualify due to my lack of ability to afford an attorney. I hereby waive my right to be represented by counsel.
 4. I have been informed by the Court that I may request counsel at any stage of these proceedings. I understand that I have the right to remain silent, to offer evidence, to cross examine witnesses. A record of all proceedings is being made and will be made available to me upon my request.
(9/22/97)
The trial court also made a specific inquiry of appellant as to the nature of the proceeding. T. at 25.
Because of this inquiry and the signing of this form on the date of the hearing we deny Assignment of Error I and II.
 III, IV
Appellant claims he was denied his right to counsel and denied his right to effective assistance of counsel. We disagree.
Juv.R. 29 provides in pertinent part that:
 `(B) At the beginning of the hearing, the court shall do all of the following:
 (1) Ascertain whether notice requirements have been complied with, and, if not, whether the affected parties waive compliance;
 (2) Inform the parties of the substance of the complaint, the purpose of the hearing, and possible consequences of the hearing . . . .
 (3) Inform unrepresented parties of their right to counsel and determine if those parties are waiving their right to counsel;
 (4) Appoint counsel for any unrepresented party under Juv.R. 4(A).'
Appellant claims under Strickland v. Washington (1984),466 U.S. 668, 696 and Jones v. Lucas County Children Services Board
(1988) 46 Ohio App.3d 85 he was denied effective assistance of trial counsel.
We find the trial court made an inquiry as anticipated under Juv.R. 29 and appellant waived his right to an attorney.
 JUDGE HOFFMAN: I'll decide if I want the blood testing and that order done at another point. We're here on this proceedings. Do you want an attorney?
 MR. GRAHAM: (Alleged father) Ah, I would prefer to represent myself.
JUDGE HOFFMAN: Okay.
 MR. GRAHAM: (Alleged father) I've contacted several attorney's. Ah, one (1) through Legal Aid . . . which they said it would be a conflict of interest.
JUDGE HOFFMAN: Okay.
* * *
 JUDGE HOFFMAN: Yea, well . . . she hasn't made a lot of things in a couple years it looks like. But you want to represent yourself and you're willing to put your . . . your position forth to the Court, is that right?
MR. GRAHAM: (Alleged father) . . . Yes your Honor I am.
 JUDGE HOFFMAN: You have . . . you understand that you have the right to have an attorney and this is a parental rights determination? This is where I can cut off all your rights to the child . . . . do you understand that?
MR. GRAHAM: (Alleged father) Yes sir.
 JUDGE HOFFMAN: Okay. And you feel that you want to represent yourself and submit your position to the Court, is that correct?
MR. GRAHAM: (Alleged father) Yes sir.
JUDGE HOFFMAN: Now . . . do you have any questions for me?
 MR. GRAHAM: (Alleged father) Ah . . . what I would like to know is why . . . they are pursuing a paternity . . . a DNA testing?
* * *
MR. GRAHAM: (Alleged father) Yes sir.
 JUDGE HOFFMAN: And you want to go forward? You don't want an attorney?
 MR. GRAHAM: (Alleged father) No, we'll proceed if it please the Court.
T. at 26, 27, 28.
Based on this inquiry, we find the trial court fulfilled the letter and spirit of the statute. Further, once appellant has waived trial counsel, he can not claim an error which he did invite. See, State ex rel. Bitter v. Massig (1995),72 Ohio St.3d 249. State v. Chappell (1994),97 Ohio App.3d 515, 537;
Assignments of Error III and IV are denied.
 V
Appellant claims the trial court erred in denying him a continuance to comply with the case plan. We disagree.
Any denial of a continuance must be reviewed under the abuse of discretion standard. Niam Investigations, Inc. v. Gilbert
(1989), 65 Ohio App.3d 125, 127. In order to find an abuse of that discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. Blakemore v. Blakemore (1983),5 Ohio St.3d 217.
From our review of the record appellant did request a continuance of the September 22, 1997 hearing but only because the mother of the child was not present. T. at 5. The trial court denied the request. Appellee asked for a continuance of the July 28, 1997 hearing to accommodate appellant and his attempt to comply with the case plan.
 This is the first time SCDHS has been able to locate Mr. Graham in the approximately four years SCDHS has been involved with the family. Mr. Graham indicated to SCDHS that he has been trying to locate Tiffany for approximately six years, which is the time that Mother ran away with the child. He has not been able to find her until SCDHS contacted him. Mr. Graham has also indicated a desire to establish paternity. The paperwork for these proceedings have been sent to him and the process is under way. Due to these unforeseen events, SCDHS is requesting a continuance to allow time for the paternity test to be done and the results to come back.
Therefore we find appellant was not denied a continuance to comply with the case plan nor can we find the trial court's denial of the continuance to be an abuse of discretion. As the trial court noted the case file is filled with times when the mother did not appear and her absence did not prejudice appellant.
Assignment of Error V is denied.
 VI, VII
Appellant claims the trial court erred in ordering permanent custody to DHS, terminating his parental rights and finding due diligence on behalf of DHS. We disagree.
Appellant appears to argue under these assignments that the trial court's decision is against the manifest weight of the evidence. "As such, we must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed." State v. Otten (1986), 33 Ohio App.3d 339, 340.
The trial court found as to Tiffany and appellant that this case had extensive history dating back to 1993 and after a review of the testimony of the various case workers that the mother and none of the father's have done anything on the Case Plans and have provided no support or care for these children. The Court notes that William Graham did establish paternity of Tiffany, but testified that he is unable to care for her and he has not seen her in the last four (4) years. He is disabled and lives in a rooming house. The Court notes that he wants his daughter, Stephanie Goddard, to raise this child. Although Tiffany has no idea who he or for that matter who Mrs. Goddard are, he wants custody.' * * *' The Court finds that none of these parents have shown a consistent pattern of wanting to reunify with their children. * * * Only Mr. Graham has shown some concern but this Court notes that he himself can not care for this child.'
And although appellant was given two months to establish a relationship or to prove himself, he further stated he could not have the child in his efficiency apartment and that he was disabled. He opined that he have custody, so he could have Tiffany live with his older daughter during the week and visit him on weekends. T. at 48. Appellant admitted to not having seen Tiffany from 1990 to 1993 and had only visited her two or three times during a seven month period in 1993. T. at 53. From that time until the hearing, appellant had not seen Tiffany for four years. T. at 49. The case workers also testified that the mother did not establish independent housing and was essentially a "transient" (T. at 37), she had various jobs for short durations, (T. at 38) and she never contacted the caseworkers for visitation over a four to five month period. T. at 21. By judgment entry filed October 21, 1997, the trial court properly concluded that the parents had demonstrated a lack of commitment to the child. The child was in long term foster care to facilitate reunification, but no one demonstrated any commitment to her.
Based upon the record, we find the trial court had sufficient credible evidence thereupon which to base his findings and conclusion. We find no evidence of appellee's lack of diligence in planning for reunification.
Assignments of error VI and VII are denied.
The judgment of the Court of Common Pleas of Stark County, Ohio, Juvenile Division is hereby affirmed.
By Farmer, P.J., Gwin, J. and Wise, E., V.J. concur.
For the reasons stated in the Memorandum-Opinion on file, the judgment of the Court of Common Pleas of Stark County, Ohio, Juvenile Division is affirmed.